(134 App. Div. 527.)

PEOPLE ex rel. WILLIAMS, Labor Com'r, v. ENO.

(Supreme Court, Appellate Division, First Department. November 19, 1909.)

1. HEALTH (§ 21*)—POLICE POWER—LABOR LAW.

Labor Law (Laws 1897, p. 482, c. 415) art. 6, § 86, as amended by Laws 1907, p. 1049, c. 490, requiring owners and tenants of existing factory buildings to secure to their employés proper ventilation, is a valid exercise of the police power for the preservation of public health.

[Ed. Note.—For other cases, see Health, Cent. Dig. § 25; Dec. Dig. § 21.*]

2. HEALTH (§ 37*)—REGULATION OF VENTILATION—PERSONS LIABLE FOR NON-OBSERVANCE—"OWNER"—"TENANT FACTORY."

Labor Law (Laws 1897, p. 482, c. 415) art. 6, § 86, as amended by Laws 1907, p. 1049, c. 490, requires the owner, agent, or lessee of a factory to provide in each workroom thereof sufficient ventilation and makes such persons otherwise liable to a penalty. Section 94, as added by Laws 1906, p. 303, c. 178, and amended by Laws 1908, p. 1217, c. 426, § 2, provides that the term "owner" shall mean the owner of the freehold or the lessee, and defines the term "tenant factory" as a building, separate parts of which are occupied by different persons, and one or more of which parts is so used as to constitute a factory, and makes the owner of such tenant factory responsible for the nonobservance of section 86, and provides that the lessee shall permit the owner to enter the premises to comply with the law. Held, that where the owner of a building leases the lower floor to a cigar manufacturer under a lease requiring the tenant to observe such regulations, and the latter partitions the floor, puts in work benches, stoves, etc., thereby creating poor ventilation, the owner is personally liable, though he did not create the condition, and though the tenant may be also liable.

[Ed. Note.—For other cases, see Health, Dec. Dig. § 37.*

For other definitions, see Words and Phrases, vol. 6, pp. 5134–5151; vol. 8, p. 7744.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1ˈ07 to date, & Rep'r Indexes

Submission of controversy on an agreed statement of facts between the People of the State of New York, on the relation of John Williams, Commissioner of Labor, and Amos F. Eno. Judgment entered for plaintiff.

Argued before PATTERSON, P. J., and INGRAHAM, Mc-LAUGHLIN, LAUGHLIN, and CLARKE, JJ.

Frederick Cunningham (Frederic V. R. Turk and Wm. W. Walling, on the brief), for plaintiff.

Huntington, Rhinelander & Seymour (David B. Ogden, of counsel, and Francis C. Huntington, on the brief), for defendant.

CLARKE, J. Submission of a controversy upon an agreed statement of facts. Plaintiff seeks to recover the sum of $20 penalty under section 86, art. 6, c. 415, p. 482, of the Laws of 1897, the labor law, as amended by subsequent laws up to and as existing on July 1, 1908, for failure to provide proper and sufficient means of ventilation in the first loft of the premises 427–429–431 West Broadway. Defendant is the owner of said buildings. They are five-story loft buildings used by different tenants for various manufacturing purposes. On March 4, 1903, defendant leased the first loft of 427–429 West Broadway, having a frontage of 50 feet by about 90 feet in depth, to the firm of Josephson Bros. to be used for the sale and manufacture of cigars. The lease provided that the parties of the second part would—

"keep the said premises in such order and condition to conform in all respects to the rules and regulations of the board of health, and as shall or may be required by the ordinances of the city of New York, or any other legal authority, and that they will do or cause to be done at their own proper costs and expenses all such repairs as shall be necessary during said demised term."

Said lease went into effect on or about the 1st day of April, 1903, and was in force up to the 1st day of May, 1909. At the time the lease went into effect the loft was entirely open and unobstructed from front to rear, with the exception of a small space for toilets and elevator shaft, hoists, and staircases. Subsequently a lease of the adjoining floor of the other building, No. 431 West Broadway, with 25 feet frontage, was also taken, with the same general conditions and terms in the lease, and a connecting doorway was opened. At the time of the letting there were 11 windows on West Broadway and 9 windows in the rear, and the upper or lower sashes could be opened at pleasure. The height from the floor to the ceiling was 12 feet clear.

Subsequent to the making of the leases, Josephson Bros., the tenants, placed in the lofts partitions, tables, benches, stoves, racks, presses, counters, shelves, and a motor room, and at the time of serving of said notice said premises were used in part as a workroom and in part as an office and stockroom for cigars and leaf tobacco, and from 75 to 85 persons were continuously employed. The total number of persons that could be employed when all the workbenches were in use was 85. The temperature of the room was usually high, and the humidity was also high, because of the evaporation from the tobacco. A number of the employés were allowed to smoke. There was usually a fire in the stove, and several gas jets burning. The windows, al-

though capable of being opened, were usually kept closed, except for very slight openings, and the benches are so arranged that open windows would cause drafts on the persons working at them, unless the windows were provided with proper appliances to prevent such drafts. A test of the air made by the relator under the existing conditions showed that the air was foul to such an extent as to be prejudicial to the health of persons working therein in the numbers and under the conditions described.

On or about the 5th of March, 1908, a letter from the factory inspector was served upon the defendant as follows:

"You are hereby directed to comply with the following requirements of law (section 86, c. 415, Laws of 1897, as amended): * * * Provide means for and obtain proper and sufficient ventilation in workrooms. If these requirements are not complied with within twenty days from the date of this notice, legal proceedings will be commenced against you."

The defendant, upon the receipt of said notice, immediately notified the tenants, and gave them a copy thereof, and demanded of them that they comply with its terms. The defendant for at least 64 days after the receipt of said notice did not comply with the requirements thereof, and during that time the said requirements were not in fact complied with by the tenants or any other person. On the 9th of April, 1908, defendant was served with a notice reading as follows:

"On March 5, 1908, you were ordered to provide means for and maintain proper and sufficient ventilation in the factory at 427–431 West Broadway, of which you are the owner, and occupied by Albert Back and Josephson Bros. I am informed that this order has not been complied with. You are, therefore, notified that unless this order be complied with by the 19th of October, 1908, an action will be commenced against you to recover the statutory penalty of ten dollars per day for each day after the expiration of the twenty days, as indicated in our original notice; i. e., March 26, 1908."

The relator has not served upon the tenants any notice requiring them to provide and maintain means of ventilation of said premises, and has not commenced any proceedings against said tenants. The question submitted is whether the defendant is liable for any statutory penalty by reason of the facts above set forth.

Article 6 of the labor law is entitled "Factories." Section 94 thereof, as amended by section 2, c. 426, p. 1217, of the Laws of 1908, provides as follows:

"The term 'owner' as used in this article shall be construed to mean the owner or owners of the freehold of the premises or the lessee or joint lessee of the whole thereof, or his, her or their agent in charge of the property."

Said section also provides:

"A tenant factory within the meaning of the term as used in this chapter is a building, separate parts of which are occupied and used by different persons, companies or corporations, and one or more of which parts is so used as to constitute in law a factory. The owner, whether or not he is also one of the occupants, instead of the respective lessees or tenants, shall be responsible for the observance and punishable for the nonobservance of the following provisions of this article, anything in any lease to the contrary notwithstanding, namely, the provisions of section 79" (inclosure and operation of elevators and hoisting shafts); "section 80" (stairs and doors, hand rails, etc.); "section 82" (fire escapes); "section 83" (ditto); "section 86" (ventilation); "section 90" (examination of factories, requiring of repairs and improvements,

lf unsafe); "section 91" (inspection of boilers), "and the provisions of section 81 with respect to the lighting of halls and stairways; except that the lessees or tenants also shall be responsible for the nonobservance of the provisions of sections 79, 80, 86 and 91 within their respective holdings."

The section also provides that:

"The lessee or tenant of any part of a tenant factory shall permit the owner, his agents and servants, to enter and remain upon the demised premises whenever and so long as may be necessary to comply with the provisions of law, the responsibility for which is by this section placed upon the owner; and his failure or refusal so to do shall be a cause of dispossessing said tenant by summary proceedings to recover possession of real property, as provided in the Code of Civil Procedure."

Section 86 of the labor law, as amended by chapter 490, p. 1049, of the Laws of 1907, provides that:

"The owner, agent or lessee of a factory shall provide, in each workroom thereof, proper and sufficient ventilation; if excessive heat be created or if steam, gases, vapors, dust or other impurities that may be injurious to health be generated in the course of the manufacturing process carried on therein the room must be ventilated in such a manner as to render them harmless, so far as practicable; in case of failure the commissioner of labor shall order such ventilation to be provided. Such owner, agent or lessee, shall provide such ventilation within twenty days after the service upon him of such order, and in case of failure, shall forfeit to the people of the state ten dollars for each day after the expiration of such twenty days, to be recovered by the commissioner of labor."

The defendant claims that, where the condition has been created by the lessee during his term, the owner is not responsible therefor, and no liability attaches to him. The relator claims that by the statute the owner is liable, and that the term "owner" is defined by the statute to be "the owner or owners of the freehold of the premises, or the lessee or joint lessees of the whole thereof"; that the terms of the lease at bar, under which the tenants agreed to obey legal orders, do not at all affect the state in its enforcement of the health laws which come under the general grant of the police power, and that the statute especially authorized the owner to enter and remain upon the demised premises to make the necessary repairs and alterations, and that, if the tenant shall refuse to permit him such entrance, the tenant may be summarily dispossessed; and that, while it is true that the lessees or tenants shall also be responsible for the observance, and punishable for the nonobservance, of the provisions of section 86 within their respective holdings, the owner is primarily liable, and may be proceeded against.

It is clear that the law under consideration was passed by the Legislature in the exercise of the police power of the state, and that it tends "in a degree that is perceptible and clear towards the preservation of the lives, the health, the morals or the welfare of the community," and so is a valid exercise of the power within the principles thoroughly established in this state and illustrated by the case of Health Department of the City of New York v. Rector, Church Wardens, and Vestrymen of Trinity Church, 145 N. Y. 32, 39 N. E. 833, 27 L. R. A. 710, 45 Am. St. Rep. 579, where Judge Peckham said:

"The Legislature, in the exercise of this power, may direct that certain improvements shall be made in existing houses at the owners' expense, so that

the health and safety of the occupants, and of the public through them, may be guarded. These exactions must be regarded as legal, so long as they bear equally upon all members of the same class, and their cost does not exceed what may be termed one of the conditions upon which individual property is held. It must not be an unreasonable exaction, either with reference to its nature or its cost. Within this reasonable restriction the power of the state may, by police regulations, so direct the use and enjoyment of the property of the citizen that it shall not prove pernicious to his neighbor or to the public generally. * * * One of the late instances of this kind of legislation is to be found in the law regulating manufacturing establishments. Laws 1887, p. 575, c. 462. The provisions of that act could not be carried out without the expenditure of a considerable sum by the owners of a then existing factory. * * * Has the Legislature no right to enact laws such as this statute regarding factories, unless limited to factories to be thereafter built? * * * I think to so hold would be to run counter to the general course of decisions regarding the validity of laws of this character, and to mistake the foundation upon which they are placed."

When it is admitted that the subject-matter of the acts in question comes within the exercise of the police power by the Legislature, it was for that body to determine the most efficacious way to insure its enforcement. It has determined that, when an owner of a building turns it into a tenant factory as defined by the law, that owner should be held responsible in defined particulars for the observance of this health law, and by specific provisions has conferred upon him opportunity and power to observe those provisions by right of entry, and, if necessary, dispossess proceedings. It has in terms also made the tenant responsible. Whether the public officer charged with the enforcement of the law should proceed against the owner, or the tenant, or both, is a matter of administration of the law, with which the court has nothing to do. It is no answer for one person, who is made responsible by law for an existing condition, to say that another person is also responsible, and should be proceeded against.

Upon the facts set forth, we answer the question submitted by stating that the defendant is liable for the statutory penalty sued for, and direct that judgment be entered for the plaintiff for the sum of $20, together with the costs of this submission. All concur.